22918, 22951. HYDE *v.* ATLANTA AND WEST POINT RAILROAD COMPANY; and *vice versa.*

DECIDED JUNE 17, 1933.

*Hall & Jones,* for plaintiff.

*Howell, Heyman & Bolding, Allen Post, Stanford Arnold,* for defendant.

GUERRY, J. This is the second appearance of this case in this court. See *Atlanta & West Point R. Co.* v. *Hyde,* 45 *Ga. App.* 548 (165 S. E. 466). Exceptions were taken to the overruling of the demurrer filed by the railroad company, and this court held that the demurrer should have been sustained and the petition dismissed. Before the filing of the remittitur in the court below, the plaintiff tendered an amendment, which was allowed over the objection of the defendant, and, after a hearing of the demurrer to

the petition as amended, the court sustained the demurrer. Exceptions to the order sustaining the demurrer bring the case again to this court for determination. A cross-bill of exceptions was filed, taking exception to the allowance of the amendment. The amendment was an amplification of the original petition, setting forth that the plaintiff was upon the premises of the railroad company by reason of having been invited thereon by a passenger on one of the defendant's trains, in order to transact business with the said passenger, such business being purely personal as between the alleged invitee and the passenger; that the business was to be conducted during the time the train was stopped at the depot of the defendant; that such invitation was delivered to petitioner by a third person acting for the prospective passenger, and that, acting solely in response to such invitation delivered by a third person informing him that a prospective passenger desired to see him on a matter of mutual interest to plaintiff and the passenger, he went to the depot of the defendant and the injuries complained of occurred. It was further alleged that it had been the custom of prospective and actual passengers on trains to invite and request friends and customers to meet them at any station where the train was scheduled to stop, for the purpose of transacting business in which said passenger was interested with the party so invited; that this was a custom well known to the railroad company and not objected to by it; and that petitioner is unable to state whether said prospective passenger was actually on said train or not.

It becomes necessary to determine whether the allegations of the amendment are sufficient to withstand the ruling heretofore made by this court in this case. The petition originally alleged that the plaintiff went to the station "for the purpose of transacting some important business with a party, who petitioner was informed was a passenger on said train, said business being of interest to said passenger and petitioner, being a matter of reciprocal concern to both." Does the amendment, setting out the name of the prospective passenger and the further allegation that petitioner was there upon the invitation of such passenger to transact business with which the defendant company was not concerned, take the petition as amended without the scope of the ruling heretofore made? We think not. If the relationship of the plaintiff to the defendant be that of trespasser or licensee, then there can be no

recovery under the allegations made, for the reason that no wanton or wilful negligence is alleged, nor is there any allegation that any man-traps or pitfalls were being maintained by the defendant. Do the amendments offered make the relationship between the parties that of invitee and invitor? Plummer *v.* Dill, 156 Mass. 426 (31 N. E. 128, 32 Am. St. R. 463), is probably the leading case in decisions of this character and has been quoted approvingly by our courts of review. The real principle governing matters of this kind is set forth in the following language: "To come under an implied invitation as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there." See Gordon *v.* Cummings, 152 Mass. 513 (25 N. E. 978, 9 L. R. A. 640, 23 Am. St. R. 846), *Rome Furnace Co.* v. *Patterson,* 120 *Ga.* 521 (48 S. E. 166). In Gainesville &c. R. Co. *v.* Peck, 55 Fla. 402 (46 So. 1019), it was said: "A licensee is a person who is neither a passenger, servant, or trespasser, and not standing in any contractual relations with the railroad, and is permitted by the company to come upon its premises *for his own interests, convenience, or gratification."* (Italics ours.) In *Jones* v. *Candler,* 22 *Ga. App.* 717 (97 S. E. 112), it was held that the owner of premises owes to those who come upon his premises, upon an express or implied invitation for any lawful purpose, the duty to exercise ordinary care in keeping his premises safe. He owes no such duty to those who come upon the premises not upon an express or implied invitation, but for their own purposes, however laudable such purposes may be. In that case it was held that those who visited an office building for the purpose of transacting business with the tenants therein are invitees and entitled to the exercise of ordinary care in keeping the premises safe for the use of such invitee. It was also held that "no such obligation exists towards those who elect to come upon the premises, not for the purpose of doing such business with the owners or his tenants as the public is expressly or impliedly invited to do, but for purposes of their own." The owner of an office building impliedly invites those who come to transact business with his tenants occupying the building, and must exercise ordinary care in keeping the premises safe. In the case of *Central of Ga. Ry. Co.* v. *Hunter,* 128 *Ga.* 600 (58 S. E. 154), it was held that where the railroad company allowed the ex-

press company to occupy its depot, and its agent to maintain a post-office there, the railroad company was liable to those who came to transact business at such post-office or with the express company, for failure to exercise ordinary care in the maintenance of the premises. We can not say, however, that a railroad company owes the duty to its passengers and their invitees to maintain safe offices for the conduct of business enterprises in no manner related to that of a carrier of freight or passengers for hire. As was held in the case of *Atlantic & Birmingham R. Co.* v. *Owens,* 123 *Ga.* 393 (51 S. E. 404), the railroad company owes to one who comes to meet a passenger disembarking from its train a duty to provide premises which are safe for such invitee, for the reason that the meeting and safe conduct of such passengers is a part of the business of the defendant company and it impliedly invites those who come to meet such passengers on their arrival. "He may welcome the coming and speed the parting guest" who is a passenger.

No such facts are alleged in the present case. There could be no mutuality of interest so far as the railroad company was concerned. It owed a duty to furnish transportation to such passenger, but it did not owe a duty to furnish a place for the conduct of the private business of such passenger. In the *Hunter* case, supra, although it was not alleged that the express company and post-office were tenants of the railroad company, it was alleged that the railroad company allowed a regular place of business established at its depot and invited the public to transact business with such post-office and express company. This may readily be conceived from the very nature of the business transacted, and the fact that railroad companies are carriers for the express companies and of the mails. A general permission to the public to use premises of a railroad company, as where a path has been used, creates the relationship of licensee and not of invitee. 52 C. J. 538. In *Southern Ry. Co.* v. *Parham,* 10 *Ga. App.* 531 (73 S. E. 763), it was said: "One who goes upon a train for the purpose of assisting a lady and her young children who intend to become passengers thereon is in no sense a trespasser, but is a licensee, and when his presence thereon and his purpose to get off become known to the employees of the railroad company in charge of the train, he is entitled to the duty of ordinary diligence on their part." In the case of Post *v.* Texas & Pacific Ry. Co., 23

S. W. 708 (1), it was held that a railroad company is under no obligation to keep the platform about its depot in safe condition as to a boarding-house keeper, who goes to the depot to meet an incoming train for the purpose of securing a boarder. The distinction as to mutuality of interest is clearly made in the case of *A., B. & A. R. Co.* v. *Owens,* supra. It may not be said that there is any mutuality of interest in one who goes not to "take charge" of a passenger, but for the transaction of purely personal business in which the railroad has no concern and no mutuality of interest. See, in this connection, the case of St. Louis I. M. & S. Ry. Co. *v.* Fairbairn, 48 Ark. 491 (4 S. W. 50). In Peterson *v.* S. & W. R. R., 143 N. C. 260 (55 S. E. 618, 8 L. R. A. (N. S.) 1240, 118 Am. St. R. 799), it was said that by carrying on its cars vendors of fruit, etc., for sale to passengers, a railway company does not invite the public to enter its trains at stations for the sole purpose of making purchases, and the company's failure to object to persons frequently doing so does not create a permissive license. In Earl *v.* C. R. I. P. Ry. Co., 109 Iowa 14 (79 N. W. 381, 77 Am. St. R. 516), it was said: "Cabooses and coaches are not ordinarily held out to the public as places for visiting." See also 3 Elliott on Railroads, p. 853, and citations. In McElvane *v.* Central of Ga. Ry. Co., 170 Ala. 525 (54 So. 489, 34 L. R. A. (N. S.) 715), it was held that one who goes upon a railroad car to transact business of his own with a passenger is a mere trespasser, to whom the railroad company owes merely the duty not to wilfully and wantonly injure him, or not negligently to do so after discovering he is in peril.

It would seem that, this court having held in this particular case that a person entering upon the premises of a railroad company to see a person who may be a passenger on an incoming train, for the transaction of purely personal business, owes to him only the duty owed to a licensee, and not to an invitee, the amendments offered are but an amplification of the original petition, which was "born dead." Its nature can not be changed so as to make it live. The court did not err in sustaining the demurrer.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Broyles, C. J., and MacIntyre, J., concur.*